UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-cv-21575-BLOOM/ELFENBEIN

MIRACLE SURROGACY, LLC,
a Florida limited liability company,
MIRACLE SURROGACY OF MEXICO, LLC
a Florida limited liability company, and
BRIAN YADEN LUNA,
an individual

        Plaintiffs,

vs.

NAIAH NIKOLE MONELLO-FUENTES,
an individual, and
AYMERIC MONELLO, an individual

        Defendants.

_____/

**EXPEDITED MOTION FOR TEMPORARY RESTRAINING ORDER**

    Plaintiffs, Miracle Surrogacy, LLC ("Miracle Surrogacy"), Miracle Surrogacy of Mexico, LLC ("Miracle Surrogacy of Mexico"), and Brian Yaden Luna's ("Yaden"), pursuant to Fed. R. Civ. 65(b) and Local Rule 7.1(d)(2) of the Local Rules of the United States District Court for the Southern District of Florida, move this Court for entry of a temporary restraining order against Defendants Naiah Nikole Monello-Fuentes ("Fuentes") and Aymeric Monello ("Monello"), restraining Defendants from disseminating further false and damaging statements in relation to Plaintiffs, and in support thereof show as follows:

    1.    This Action centers around Plaintiffs claim against Defendants for defamation which was filed on April 4, 2025 naming solely Fuentes as a defendant (D.E. 1 and 1-2). The

complaint was amended on April 10, 2025 to add Monello as Fuentes' co-defendant (the "Action"). (D.E. 6 and 6-1).

2. Fuentes and Monello have and continue to make false and defamatory statements in relation to Miracle Surrogacy, Miracle Surrogacy of Mexico, and Yaden. These false statements are being widely disseminated across various platforms, including Facebook, YouTube, Reddit, Google Reviews, and Instagram. Specifically, Fuentes and Monello have published several statements accusing Miracle Surrogacy, Miracle Surrogacy of Mexico, and Yaden of human trafficking, child laundering, gross negligence, medical malpractice, scam practices, and creating errors in surrogacy practices, none of which are true. These statements are causing irreparable harm to Plaintiffs' reputations and business operations, including the disruption of business relationships and the loss of clients. Plaintiffs have provided evidence of the defamatory statements in this Motion, attached herein as Exhibits A through K.

3. A ruling on this motion is urgently required **by April 14, 2025 (or sooner)**, as the Defendants' false statements are continuing to spread. Plaintiffs have reason to believe that Fuentes and Monello are actively seeking to expand the false narratives to additional platforms, including television networks, further harming the Plaintiffs' reputation and business interests.

4. Immediate relief is necessary because the ongoing defamatory statements have caused, and will continue to cause, significant and irreparable harm to Plaintiffs' reputation and business. If the Defendants are not immediately restrained from continuing to disseminate these false statements, Plaintiffs will suffer permanent damage that cannot be undone by a later judgment. The potential for further harm increases as Defendants continue to post defamatory content across multiple public platforms, most of which have global reach.

5. In support of this Motion, Plaintiffs submit the affidavit of Brian Yaden Luna. *A true and correct copy of the affidavit is attached hereto as* **Exhibit "A."**

6. On or about December 23, 2023, Fuentes and Monello engaged Miracle Surrogacy and Miracle Surrogacy of Mexico's fertility agencies assisting families through the surrogacy process, to conceive a child via the use of an anonymous egg donor, the sperm of Monello to fertilize the egg donor's egg, and a surrogate to carry the embryo to term. No medical services were performed by Miracle Surrogacy or Miracle Surrogacy of Mexico in any part of the genetic collection (sperm or egg), conception, and surrogacy.

7. Miracle Surrogacy and Miracle Surrogacy of Mexico are primarily owned and operated, *inter alia*, by Brian Yaden Luna ("Yaden").

8. In providing these agency services, Miracle Surrogacy and Miracle Surrogacy of Mexico provide the non-medical services in the surrogacy process. Due to Miracle Surrogacy and Miracle Surrogacy of Mexico's role, which is non-medical in nature and in scope, at no time did either entity guarantee satisfaction with the medical services or any medical outcomes related to the surrogacy journey.

9. After the surrogacy journey was completed, Fuentes received the surrogate baby and thereafter, began manufacturing libelous statements. It is important to note that at no point did Fuentes provide any genetic material and as such, prior to the surrogacy journey, Fuentes knew that the child in question would not be genetically related to Fuentes.

10. On or about March 28, 2025, Fuentes published the first of the false statements relating to Miracle Surrogacy and Miracle Surrogacy of Mexico on Facebook.com, which is widely accessible by the public. Specifically, Fuentes created a Facebook group named "Justice for Baby Emma: Hold Miracle Surrogacy Accountable" (the "Facebook Group"). The Facebook Group was

allegedly created to seek justice against Miracle Surrogacy as a result of being "misled, denied access to basic medical records, and ultimately [being] handed a child who is not biologically ours." *A true and correct copy of the Facebook Group description is attached hereto as* **Exhibit "B."**

11. The foregoing statements are false as Miracle Surrogacy and Miracle Surrogacy of Mexico are not engaged in practices based on misrepresentation and were clearly intended to affect Miracle Surrogacy's business operations.

12. Thereafter, on or around March 31, 2025, Fuentes began manufacturing slanderous statements.

13. Such slanderous statements are being uploaded to YouTube.com, where Fuentes has over eighteen thousand (18,000) subscribers.

14. To date, Fuentes has uploaded five (5) videos centered around slanderous statements against Miracle Surrogacy, Miracle Surrogacy of Mexico, and Yaden. *A true and correct copy of Fuentes' YouTube page reflecting the five related videos are attached hereto as* **Exhibit "C."**

15. All five (5) videos refer to Miracle Surrogacy and Miracle Surrogacy of Mexico in their content, but the video titled "President: Claudia Sheinbaum" takes it a step further and specifically addresses Yaden.

16. Fuentes makes several defamatory statements including but not limited to stating that Miracle Surrogacy, Miracle Surrogacy of Mexico, and Yaden took part in "gross negligence and potential medical malpractice", are "responsible for the creation of hundreds of babies without verifying they are biologically related to the intended parents who hire them", that Fuentes is

"aware of another case where another couple's embryo was implanted incorrectly", that they are "human trafficking" and that Fuentes was "pressured to continue a process built on deception."

17. In the same video, Fuentes acknowledges that it has been communicated that such grave statements "would unfairly damage [Miracle Surrogacy and Miracle Surrogacy of Mexico's] reputation." *A true and correct composite of screenshots of the YouTube video concerning the various foregoing statements are attached hereto as **Exhibit "D."***

18. Moreover, in one of the YouTube videos, Fuentes further individually damages Yaden's reputation, causing irreparable harm. *A true and correct screenshot of Fuentes' response to a YouTube comment is attached hereto as **Exhibit "E."***

19. The foregoing statements are entirely false as Miracle Surrogacy, Miracle Surrogacy of Mexico, and Yaden do not engage in human trafficking, gross negligence, medical malpractice, and assisting in the creation of incorrect genetics, nor do they act in any manner that would justify such statements. Such slander misrepresents Miracle Surrogacy, Miracle Surrogacy of Mexico, and Yaden's actions and reputation and are entirely false.

20. In the most recent video uploaded, Fuentes shares a story which insinuates that a former employee of Miracle Surrogacy of Mexico informed Fuentes that they had been asked to "alter medical records and when they refused[,] they believe the records were still changed." *A true and correct copy of the screenshots of the statement is attached hereto as **Exhibit "F."***

21. Fuentes has made such false statements with actual malice and recklessness, or at the very least, negligence. Fuentes acted with disregard for the truth in failing to verify and provide evidence of the various statements prior to their publication, even though Fuentes knew or should have known that such false statements would cause irreparable harm to Miracle Surrogacy, Miracle Surrogacy of Mexico, and Yaden's reputation.

22. Such statements were made with the intent of harming Miracle Surrogacy, Miracle Surrogacy of Mexico, and Yaden's reputation and professional standing in their industry and in the Florida market, where Miracle Surrogacy and Miracle Surrogacy of Mexico are based. Fuentes knew or should have known that the statements would be understood by readers and/or viewers in Florida as defamatory.

23. The false statements continued. Fuentes also initiated a thread on Reddit.com titled "Mexico Surrogacy: Miracle Surrogacy Nightmare." The thread particularly calls on specific individuals to exploit Miracle Surrogacy and Miracle Surrogacy Mexico and to damage their business stating, if you are "a lawyer, a journalist, a lawmaker, a parent considering surrogacy, please help us. Please share this." *A true and correct copy of the Reddit post is attached hereto as **Exhibit "G."***

24. Fuentes also ensured to post false statements directly on Miracle Surrogacy and Miracle Surrogacy of Mexico's review section on Google.com. The post, *inter alia*, states "[w]e were given a baby that was not ours." *A true and correct copy of the Google review is attached hereto as **Exhibit "H."***

25. However, Fuentes did not stop there. Fuentes also created an Instagram account directly using Miracle Surrogacy's name, called "miracle surrogacy nightmare." *A true and correct copy of the Instagram account is attached hereto as **Exhibit "I."***

26. Thereafter, on April 8, 2025, as an administrator of the Facebook Group, Monello joined Fuentes in disseminating slanderous statements.

27. Specifically, Monello published on the Facebook Group false statements stating, *inter alia*, that Miracle Surrogacy is engaging in "child laundering." *A true and correct copy of the screenshot of the statement is attached hereto as **Exhibit "J."***

6

28. Fuentes and Monello are also using the Facebook Group to falsely accuse Miracle Surrogacy and Miracle Surrogacy of Mexico of being a "scam." *A true and correct screenshot of the Facebook Group being used to insinuate "scam" practices is attached hereto as* **Exhibit "K."**

29. Fuentes' false statements on the various platforms were widely disseminated and had a particularly damaging effect on Miracle Surrogacy, Miracle Surrogacy of Mexico, and Yaden's reputation.

30. Following the publication of the various defamatory statements, Miracle Surrogacy and Miracle Surrogacy of Mexico's business relationships were disrupted.

31. Amongst the several damaged business relationships were two potential clients who were in the process of beginning their surrogacy journey with Miracle Surrogacy and Miracle Surrogacy of Mexico but as a result of Fuentes' false statements, such potential clients have publicly announced in reply to the Facebook Group, that they are refusing to do business with Miracle Surrogacy. *A true and correct screenshot of the publications of loss of business are attached hereto as* **Exhibit "L."**

32. Furthermore, under knowledge and belief, Fuentes and Monello are in the process of further disseminating false statements related to Miracle Surrogacy, Miracle Surrogacy of Mexico, and Yaden via television networks, additional YouTube videos, and various other platforms.

## MEMORANDUM OF LAW

**I.     Temporary Restraining Order.**

Pursuant to Fed. R. Civ. 65(b), a party may seek a temporary restraining order ("TRO") if it believes it will suffer irreparable harm during the pendency of an action. The analysis required for granting a TRO is substantially identical to that of aa preliminary injunction. *Orkin v. Albert*,

557 F. Supp. 3d 252, 256 (D. Mass 2021) quoting *Bourgoin v. Sebelius*, 928 F. Supp. 2d 258, 267 (D. Me. 2013). To obtain relief for a TRO, the moving party must satisfy the following factors "(i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction the movant will suffer irreparable harm, (iii) the balance of relevant hardships between the parties favors relief; and (iv) the effect of the court's ruling on the public interest." *Id. citing Coquico, Inc. v. Rodríguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009).

To prevail on a cause of action for defamation, a plaintiff must plead and ultimately prove five elements: "(1) publication; (2) falsity; (3) actor must act… at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 459 (Fla. 3d DCA 2023) quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). To establish irreparable harm, the Plaintiff must present evidence that the false statements would cause harm to their business interest and goodwill. *Recovery Hous. Acad. LLC v. Candelario*, 562 F. Supp 3d 333, 342 (D. Ariz. 2022). Loss of goodwill supports the finding of the possibility of irreparable harm. *Id*. In analyzing the balance of hardships in favor of the Plaintiff, it must be taken into consideration whether the Plaintiff "will suffer continuing harm to the reputation and goodwill of their business if [Defendant is] allowed to continue to make false statements about what happened… [and Defendant] will suffer little, if any, hardship in not being allowed to make false statements… to third parties." *Id*. As to analyzing whether the TRO will advance the public interest, "[c]ourts have found that the public interest is served by protecting a company's right to business operations and contractual rights." *Id.*

In the case at bar, it is likely that Plaintiffs will succeed in their defamation claim as Defendants publicized the foregoing false statements on various platforms including Facebook, Youtube, Reddit, Instagram, and Google. Defendants, at a minimum, acted negligently in making

such false statements. Exs. B-K. Actual damages were incurred as evidenced by the public posting of lost business relationships and furthermore, Plaintiffs are being subjected to ridicule, hatred, and contempt. Ex. L. Such statements were in fact defamatory as Defendants stated, *inter alia*, that Plaintiffs were engaging in human trafficking, child laundering, scam practices, gross negligence and potential medical malpractice. Ex. D; Ex. J-K. There is no basis for such atrocious accusations, and it is clear that Plaintiffs do not even engage in the medical process of the surrogacy journey to be accused of medical malpractice. Accordingly, such statements do not require further evidence to be proven as defamatory.

    Second, without an injunction, Plaintiffs will suffer irreparable harm. The statements made by Defendants are widely disseminated across multiple platforms, including Facebook, YouTube, Reddit, Instagram, and Google. Exs. B-K. Plaintiffs have already experienced a loss of business interest and goodwill due to these defamatory statements. Ex. L. Such reputational harm will continue to escalate unless Defendants are enjoined from further publicizing such false statements. Furthermore, Defendants have stated intentions to continue spreading defamatory content on other media platforms. Ex. G. The ongoing nature of the harm reinforces the need for immediate relief to stop the continued defamation.

    Third, in analyzing the balance of hardships, Plaintiffs face significant harm to their business reputation, the loss of future clients, and disruption of professional and even personal relationships if Defendants' defamatory statements are allowed to continue. This harm is serious and ongoing, with specific irreparable effects on Plaintiffs' business operations. Granting the instant Motion would cause minimal harm to Defendants. A TRO would simply enjoin Defendants from continuing to publish false statements that have no basis in truth. The Defendants do not have any constitutional right to engage in defamation or to harm Plaintiffs' professional and personal

reputation by spreading falsehoods. *Echols v. Lawton*, 913 F.3d 1313, 1321 (11th Cir. 2019), *citing New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 (1964).

Finally, granting the instant Motion significantly advances the public interest as this is a business that serves the public in their journey to becoming parents. The public interest is therefore served by preventing the further dissemination of false and defamatory statements that are damaging to Plaintiffs' businesses and reputations, and that disrupt commerce. False claims regarding medical malpractice and human trafficking undermine public confidence in the surrogacy industry and create unnecessary confusion and harm.

Accordingly, Fed. R. Civ. 65(b), authorizes the Court to enter a temporary restraining order to restrain and prevent defamatory content that jeopardize Plaintiffs' business relationships and reputation. Defendants' continued dissemination of defamatory statements constitutes irreparable harm to Plaintiffs and to the public. As set forth herein and the attached affidavit, Plaintiffs have averred and demonstrated the foregoing elements.

**WHEREFORE**, Plaintiffs respectfully request this Court enter a temporary restraining order by April 14, 2025 (or sooner) enjoining Defendants, Defendants' agents, and all other persons acting in concert with Defendants, from continuing to publish defamatory statements regarding Plaintiffs on any platform and removing any existing defamatory content on all applicable platforms.

### **FED. R. CIV. 65 CERTIFICATION**

I hereby certify that in compliance with Federal Rule of Civil Procedure 65(b), as discussed below, I have made diligent efforts to provide notice of the pending expedited motion for a Temporary Restraining Order (TRO) to the Defendants. Due to the imminent risk of harm, this Motion was filed prior to formal service of the Amended Complaint on the Defendants and without

notice to the Defendants in advance of its filing. In complying with Rule 5, Fed. R. Civ. P., upon filing, the foregoing motion will be sent by U.S. Mail to the address listed in Summons, 5066 Palmyra Avenue, Las Vegas, NV 89146. Additionally, and due to the urgent nature of this matter, I also emailed a copy of this Motion to Defendant at naiah@me.com and aymericmonello@gmail.com. The instant Motion will also accompany formal service of process of the Summons and Complaint. As outlined in the Amended Complaint and supporting affidavit to this Motion, Plaintiffs will suffer immediate and irreparable harm if the Defendants are not restrained from continuing to disseminate defamatory statements, including damage to Plaintiffs' reputation and business. Therefore, I respectfully request that the Court dispense with the formal notice requirement and allow informal notice in order to address the urgent nature of this Motion and prevent further harm to Plaintiffs.

Dated: April 10, 2025

Respectfully submitted,

**Ontier Miami, PLLC**
201 S. Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Telephone: 305.913.8989
Facsimile: 786.808.4312
Email: jtriana@ontier.net
　　　　jerosen@ontier.net

By:   s/Jason E. Rosen
　　　JASON E. ROSEN, ESQ.
　　　Florida Bar No.: 96118
　　　JENNIFER TRIANA, ESQ.
　　　Florida Bar No.: 1026067

*Counsel for Plaintiffs*
*Miracle Surrogacy, LLC,*
*Miracle Surrogacy of Mexico, LLC and*
*Brian Yaden Luna*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF on April 10, 2025. Since neither Defendant nor counsel for Defendants has entered an appearance nor has service of process been effectuated on the Defendants, the foregoing will be served on the Defendants via email at naiah@me.com and aymericmonello@gmail.com and U.S. Mail at 5066 Palmyra Avenue, Las Vegas, NV 89146.

*s/ Jason E. Rosen*
Jason E. Rosen
