UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-21575-BLOOM/Elfenbein

MIRACLE SURROGACY, LLC,
MIRACLE SURROGACY OF MEXICO, LLC
BRIAN YADEN LUNA

    Plaintiffs,

v.

NAIAH NIKOLE MONELLO-FUENTES
and AYMERIC MONELLO,

    Defendants.
_____/

**ORDER ON EXPEDITED MOTION FOR TEMPORARY RESTRAINING ORDER**

**THIS CAUSE** is before the Court upon Plaintiffs Miracle Surrogacy, LLC ("Miracle Surrogacy"), Miracle Surrogacy of Mexico, LLC ("Miracle Surrogacy of Mexico"), and Brian Yaden Luna's ("Yaden") (collectively "Plaintiffs") Expedited Motion for Temporary Restraining Order. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

**I.   BACKGROUND**

Plaintiffs "Miracle Surrogacy and Miracle Surrogacy of Mexico are fertility agencies assisting families through the surrogacy process." ECF No. [6] at ¶ 10. The agencies "are primarily owned and operated, *inter alia*, by Yaden. *Id.*

On December 23, 2023, Defendants Naiah Nikole Monello-Fuentes ("Fuentes") and Aymeric Monello ("Monello") (collectively "the couple") contacted Miracle Surrogacy and Miracle Surrogacy of Mexico to assist in facilitating a pregnancy through surrogacy. *Id.* at ¶ 12.

The couple intended to use the sperm of Monello, the egg of an anonymous egg donor, "and a surrogate to carry the embryo to term." *Id.*

Although Plaintiffs facilitate the genetic collection, conception, and surrogacy, Plaintiffs contend that they do not provide medical services and that they do not "guarantee satisfaction with the medical services, or any medical outcomes related to the surrogacy journey." *Id.* at ¶ 13. However, after Fuentes and Monello completed the surrogacy process, they were dissatisfied with their outcome. After receiving their surrogate baby, the couple purportedly performed an at-home DNA test "which showed that Monello was in no way related to the baby." *Id.* at ¶ 14. Upon making this discovery, Plaintiffs claim "Fuentes began manufacturing libelous statements. Specifically, that the baby conceived through surrogacy is in no way biologically related to Fuentes nor Monello." *Id.* at ¶ 15.

According to Plaintiffs, Fuentes and Monello have made many libelous statements across a number of social media platforms, including Facebook, YouTube, and Instagram.[1] On Facebook, Fuentes has created a group named "Justice for Baby Emma: Hold Miracle Surrogacy Accountable (the "Facebook Group")." ECF No. [6] at ¶ 16. Plaintiffs claim the description of the Facebook Group contains libel as it states that the purpose of the group is to "seek justice against Miracle Surrogacy as a result of being 'misled, denied access to basic medical records, and ultimately [being] handed a child who is not biologically ours.'" *Id.*

Fuentes has made similar allegedly slanderous statements in a series of YouTube videos, "where Fuentes has over eighteen thousand (18,000) subscribers." *Id.* at ¶ 20. Fuentes' defamatory statements include but, are not limited to, that "Miracle Surrogacy, Miracle Surrogacy of Mexico,

---

[1] In Plaintiffs' Motion for a Temporary Restraining Order, Plaintiffs claim that Fuentes has now expanded the reach of her defamatory statements by initiating a Reddit.com thread and posting "false statements directly on Miracle Surrogacy and Miracle Surrogacy of Mexico's review section on Google.com." ECF No. [7] at 6.

and Yaden took part in 'gross negligence and potential medical malpractice,'" that they "are 'responsible for the creation of hundreds of babies without verifying they are biologically related to the intended parents who hire them,' that Fuentes is 'aware of another case where another couple's embryo was implanted incorrectly,' that they are 'human trafficking' and that Fuentes was 'pressured to continue a process built on deception.'" *Id.* at ¶ 24. Additionally, Fuentes has recently shared a story "which insinuates that a former employee of Miracle Surrogacy of Mexico informed Fuentes that they have been asked to 'alter medical records and when they refused, they believe the records were still changed.'" *Id.* at ¶ 28.

Beginning on April 8, 2025, "Monello joined Fuentes in disseminating slanderous statements" about the Plaintiffs. Monello stated in the Facebook Group that Miracle Surrogacy engages in "child laundering." The couple later accused Plaintiffs' of running a "scam." ECF No. [6] at ¶¶ 30, 32.

Plaintiffs maintain that the couple's statements "are entirely false" as Plaintiffs "do not engage in human trafficking, gross negligence, medical malpractice, [or] assist[ ] in the creation of incorrect genetics, nor do[ ] [they] act in any manner that would justify such statements." *Id.* at ¶ 27. However, despite Fuentes and Monello's statements being completely false, Plaintiffs claim the couple's allegations have disrupted their business. ECF No. [7]. Plaintiffs assert that at least "two potential clients who were in the process of beginning their journey with Miracle Surrogacy and Miracle Surrogacy of Mexico" decided they would no longer do business with Plaintiffs in light of the statements made by the couple. *Id.* at ¶ 31.

Due to Fuentes and Monello's statements, videos, and posts on social media and the resulting damage to Plaintiffs' business, Plaintiffs filed the Amended Complaint on April 10, 2025, asserting a single count of defamation against Fuentes and Monello. ECF No. [6] at 7-8. That same

3

day, Plaintiffs also filed the instant Motion for a Temporary Restraining Order. ECF No. [7]. Given the Defendants' constant posting and their global reach, Plaintiffs claim that Fuentes and Monello's false allegations will cause irreparable harm to Plaintiffs' reputation and business if the Court does not intervene immediately. *See id.* at 9.

## II. LEGAL STANDARD

### A. Temporary Restraining Order

The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction. *Heralds of Gospel Found., Inc. v. Varela*, No. 17-22281-CIV, 2017 WL 3868421, at *3 (S.D. Fla. June 23, 2017) (citing *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005)). The movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. *VAS Aero Servs., LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1357 (S.D. Fla. 2012). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and]
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

### B. Defamation

"Defamation, which includes libel and slander,[2] 'may generally be defined as the unprivileged publication of false statements which naturally and proximately result in injury to another.'" *Briseus v. JPMorgan Chase Bank, N.A.*, No. 18-CV-80671, 2018 WL 3586140, at *3 (S.D. Fla. July 26, 2018) (quoting *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (additional level of quotations omitted)). To establish a cause of action for defamation under Florida law, a plaintiff must show: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damage; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts §§ 558B, 580A-580B).

### C. Prior Restraints

"[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "Like statutes that regulate speech, court-ordered injunctions that regulate speech are also subject to First Amendment scrutiny" and therefore may constitute a prior restraint. *Krapacs v. Baccus*, 301 So.3d 976, 979 (Fla. 4th DCA 2020) (citing *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 757 (1994)); *Vrasic v. Leibel*, 106 So. 3d 485, 486 (Fla 4th DCA 2013) ("[A] temporary injunction directed to speech is a classic example of prior restraint on speech triggering First Amendment concerns.")); *see also Spagnuolo v. Ins. Office of Am., Inc.*, 356 So.3d 908, 916 (Fla 5th DCA 2023) ("Temporary restraining orders and permanent injunctions—i.e., court orders that

---

[2] "Slander is ordinarily confined to defamatory spoken words, whereas libel pertains to defamatory written statements." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 n. 11 (S.D. Fla. 2006).

actually forbid speech activities—are classic examples of prior restraints.'") (quoting *Fox v. Hamptons at Metrowest Condo. Ass'n*, 223 So. 3d 453, 456 (Fla. 5th DCA 2017)). Accordingly, Florida courts have made clear that "[i]njunctions may not be employed to prohibit the making of defamatory statements" because "a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand." *Jacobson v. Rubins*, 385 So. 3d 166, 167 (Fla. 2d DCA 2024); *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975); *see also Krapas*, 301 So.3d at 980 ("Thus, it remains clear that inunctions are not available to stop someone from uttering insults or falsehoods" on social media).

## III. DISCUSSION

"Florida's courts have long held that temporary injunctive relief is not available to prohibit the making of defamatory or libelous statements." *Vrasic v. Leibel*, 106 So.3d 485, 486 (Fla. 4th DCA 2013) (citing *Moore v. City Dry Cleaners & Laundry*, 41 So.2d 865, 873 (Fla. 1949); *Murphy v. Daytona Beach Humane Soc., Inc.*, 176 So.2d 922, 924 (Fla. 1st DCA 1965) (noting that while courts "may enjoin other types of wrongful acts, the general rule is that they cannot restrain an alleged libel or slander[.]"); *Post-Newsweek Stations Orlando, Inc. v. Guetzloe*, 968 So.2d 608, 610 (Fla. 5th DCA 2007) (explaining that temporary and permanent injunctions that forbid speech activities are prior restraints that are presumptively unconstitutional) (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993)).

Plaintiffs are in no uncertain terms requesting the Court issue an injunction restricting Defendants' speech. Plaintiffs offer no reason why the proposed injunction does not constitute a prior restraint or censorship on speech, nor do they offer any justification, let alone a compelling one, that would rebut the presumptive unconstitutionality of the injunction.[3] *See Post-Newsweek*

---

[3] While Florida courts have recognized an exception to the prohibition on prior restraints where there is an independent ground for equitable jurisdiction, *see Murtagh v. Hurley*, 40 So.3d 62, 64 (Fla. 2d DCA 2010),

*Stations Orlando, Inc.*, 968 So.2d at 611 ("To overcome this presumption of unconstitutionality, the proponent of the injunction bears a 'heavy burden.'") (quoting *Neb. Press Ass'n*, 427 U.S. at 559).[4] Therefore, the Plaintiffs' Motion must be denied because it seeks improper injunctive relief.[5] *See Baker v. Joseph*, 938 F. Supp. 2d 1265, 1270 (S.D. Fla. 2013) ("In sum, because of the well-settled rule prohibiting injunctive relief in defamation cases, Plaintiffs must include specific facts which would warrant such extraordinary relief[.]").

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Expedited Motion for Temporary Restraining Order, **ECF No. [7]**, is **DENIED**.

---

the sole cause of action in this case is defamation. Therefore, the exception does not apply.

[4] "Indeed, in over two centuries, the Supreme Court has never sustained a prior restraint involving pure speech" *Post-Newsweek Stations Orlando, Inc.*, 968 So.2d at 611 (quoting *Matter of Providence Journal Co.*, 820 F.2d 1342, 1348 (1st Cir. 1986)). This case certainly does not warrant a deviation from that precedent.

[5] While courts holding that temporary restraining orders restricting speech are presumptively invalid have dealt with the issue in the context of speech that has yet to be published, Florida courts have held that the prohibition also applies to speech after it is published. *See, e.g.*, *Palm Beach Newspapers, LLC v. State*, 183 So.3d 480, 482 (Fla. 4th DCA 2016) ("A prior restraint on publication, or censorship of information that has already been published, is presumptively unconstitutional under the First Amendment . . .. [Therefore] [w]e find that the Post's publication of the transcripts is protected by the First Amendment. We therefore grant the petition as to this part and quash the portions of the trial court's order requiring the Post to remove the transcripts from its website and prohibiting the Post from further publishing them.").

However, even assuming the First Amendment did not prevent a temporary restraining order on already published statements, Plaintiffs fail to offer evidence beyond conclusory allegations that the statements made by Defendants are false. Therefore, Plaintiffs' Motion also fails as they have not shown that they are likely to prevail on the merits. *See Rose v. GMAC Mortgage, LLC*, Civ. Act. No. 1:10-CV-1990, 2010 WL 11647446, at *1 (N.D. Ga. July 6, 2010) ("Indeed, Plaintiff's motions appear to rely exclusively on conclusory allegations . . ., which cannot in themselves support the granting of a temporary restraining order.") (citing *In re Angram Business Services, Inc.*, 250 B.R. 144, 147 (S.D. Fla. 2000) (denying temporary restraining order where movant's "evidence consists merely of conclusory statements without any factual support indicating a likelihood of success on the merits.")).

Case No. 25-cv-21575-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 11, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record