UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-21575-BLOOM/Elfenbein

MIRACLE SURROGACY, LLC,
MIRACLE SURROGACY OF MEXICO, LLC
BRIAN YADEN LUNA

        Plaintiffs,

v.

NAIAH NIKOLE MONELLO-FUENTES
and AYMERIC MONELLO,

        Defendants.

_____/

## ORDER ON MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Defendants Naiah Nikole Monello-Fuentes and Aymeric Monello's (collectively "Defendants") Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. [42]. Plaintiffs Miracle Surrogacy, LLC ("Miracle Surrogacy"), Miracle Surrogacy of Mexico, LLC ("Miracle Surrogacy of Mexico"), and Brian Yaden Luna's ("Yaden") (collectively "Plaintiffs") filed a Response in Opposition ("Response"), ECF No. [43], to which Defendants filed a Reply, ECF No. [44]. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is granted in part and denied in part.

### I.    BACKGROUND

Plaintiffs "Miracle Surrogacy and Miracle Surrogacy of Mexico are fertility agencies assisting families through the surrogacy process." ECF No. [6] at ¶ 10. The agencies "are primarily owned and operated, *inter alia*, by Yaden." *Id.*

On December 23, 2023, Defendants Naiah Nikole Monello-Fuentes ("Fuentes") and Aymeric Monello ("Monello") (collectively "the couple") contacted Miracle Surrogacy and Miracle Surrogacy of Mexico to assist in facilitating a pregnancy through surrogacy. *Id.* at ¶ 12. The couple intended to use the sperm of Monello, the egg of an anonymous egg donor, "and a surrogate to carry the embryo to term." *Id.*

Although Plaintiffs facilitate the genetic collection, conception, and surrogacy, Plaintiffs contend that they do not provide medical services and that they do not "guarantee satisfaction with the medical services, or any medical outcomes related to the surrogacy journey." *Id.* at ¶ 13. However, after Fuentes and Monello completed the surrogacy process, they were dissatisfied with their outcome.

After receiving their surrogate baby, the couple purportedly performed an at-home DNA test, "which showed that Monello was in no way related to the baby." *Id.* at ¶ 14. Upon making this alleged discovery, Plaintiffs claim that "Fuentes began manufacturing libelous statements. Specifically, that the baby conceived through surrogacy is in no way biologically related to Fuentes nor Monello." *Id.* at ¶ 15.

According to Plaintiffs, Fuentes and Monello have made many libelous statements across a number of social media platforms, including Facebook, YouTube, and Instagram. On Facebook, Fuentes has created a group named "Justice for Baby Emma: Hol Miracle Surrogacy Accountable (the "Facebook group")." ECF No. [6] at ¶ 16. Plaintiffs claim the description of the Facebook group contains libel as it states that the purpose of the group is to "seek justice against Miracle Surrogacy as a result of being 'misled, denied access to basic medical records, and ultimately [being] handed a child who is not biologically ours.'" *Id.*

Fuentes has made similar allegedly slanderous statements in a series of YouTube videos, "where Fuentes has over eighteen thousand (18,000) subscribers." *Id.* at ¶ 20. Fuentes' defamatory statements include but, are not limited to, that "Miracle Surrogacy, Miracle Surrogacy of Mexico, and Yaden took part in 'gross negligence and potential medical malpractice,'" that they "are 'responsible for the creation of hundreds of babies without verifying they are biologically related to the intended parents who hire them,' that Fuentes is 'aware of another case where another couple's embryo was implanted incorrectly,' that they are 'human trafficking' and that Fuentes was 'pressured to continue a process built on deception.'" *Id.* at ¶ 24. Additionally, Fuentes has recently shared a story "which insinuates that a former employee of Miracle Surrogacy of Mexico informed Fuentes that they have been asked to 'alter medical records and when they refused, they believe the records were still changed.'" *Id.* at ¶ 28.

Beginning on April 8, 2025, "Monello joined Fuentes in disseminating slanderous statements" about Plaintiffs. Monello stated in the Facebook group that Miracle Surrogacy engages in "child laundering." The couple later accused Plaintiffs of running a "scam." ECF No. [6] at ¶¶ 30, 32.

Plaintiffs maintain that the couple's statements "are entirely false" as Plaintiffs "do not engage in human trafficking, gross negligence, medical malpractice, [or] assist[ ] in the creation of incorrect genetics, nor do[ ] [they] act in any manner that would justify such statements." *Id.* at ¶ 27. However, despite Fuentes and Monello's statements being completely false, Plaintiffs claim the couple's allegations have disrupted their business. ECF No. [6] at ¶ 36. In particular, Plaintiffs assert that at least "two potential clients who were in the process of beginning their surrogacy journey with Miracle Surrogacy and Miracle Surrogacy of Mexico" decided they would no longer do business with Plaintiffs in light of the statements made by the couple. *Id.* at ¶ 37.

Due to Fuentes and Monello's statements, videos, and posts on social media and the resulting damage to Plaintiffs' business, Plaintiffs filed the Amended Complaint on April 10, 2025, asserting a single count of defamation against Fuentes and Monello. ECF No. [6] at 7-8.

In the Motion, Defendants argue that Plaintiffs have failed to state a claim because: (1) Plaintiffs fail to specifically identify the person or entity to whom the allegedly defamatory statements were made, (2) they fail to adequately and entirely state the allegedly defamatory statements, (3) they fail to adequately plead the falsity of the statements, (4) the statements that were made by Defendants were substantially true, (5) the statements made were opinions, not assertions of fact, and (6) the Complaint constitutes a shotgun pleading. Additionally, Defendants argue that Plaintiffs' requests for attorneys' fees, injunctive relief, and punitive damages are unavailable given the nature of their defamation claims.

Plaintiffs respond that they have adequately alleged each element of their defamation claim, and Defendants' arguments are "nothing more than premature factual defenses that are not ripe for determination at the motion to dismiss stage." ECF No. [43].

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted). *Id.* at 12.

## B. Defamation

"Defamation, which includes libel and slander,[1] 'may generally be defined as the unprivileged publication of false statements which naturally and proximately result in injury to

---

[1] "Slander is ordinarily confined to defamatory spoken words, whereas libel pertains to defamatory written statements." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 n. 11 (S.D. Fla. 2006).

another.'" *Briseus v. JPMorgan Chase Bank, N.A.*, No. 18-CV-80671, 2018 WL 3586140, at *3 (S.D. Fla. July 26, 2018) (quoting *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (additional level of quotations omitted)). To establish a cause of action for defamation under Florida law, a plaintiff must show: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damage; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts §§ 558B, 580A-580B).

## III.   DISCUSSION

Because Defendants assert several alternative bases for dismissing the Complaint, the Court addresses each argument in turn.

### A.   Identity of the Persons or Entities to Whom the Statements Were Made

Defendants argue that Plaintiffs have failed to state a claim because to adequately assert a claim of defamation, "a complaint must specifically identify the third party to whom the alleged defamatory statement was published." ECF No. [42] at 5. According to Defendants, the Amended Complaint "is completely devoid of the specific identity of any person to whom the allegedly defamatory comments by the Defendants were made." *Id.* at 6. Plaintiffs instead merely allege the statements were broadcast to large groups of unnamed individuals on social media platforms that are widely accessible to the public. *Id.* Defendants insist those allegations are too vague and fail to establish "that any third-party actually saw/heard any of the alleged defamatory statements." *Id.*

Plaintiffs respond that the Amended Complaint adequately alleges the identities of the third parties to whom the defamatory statements were published because "a plaintiff need not name each individual recipient of a defamatory statement to adequately plead" the publication element of a defamation claim. ECF No. [43] at 6. Therefore, Plaintiffs' allegation that the statements were

"made on a public medium, such as the Internet, social media, or YouTube," is sufficient to establish that the statements "could—and did—reach members of the public and potential clients of Plaintiffs." *Id.* at 7. Moreover, even if the mere posting on social media was insufficient to establish a publication, Plaintiffs argue that the exhibits attached to the Amended Complaint establish that specific persons interacted with the posts and publicly commented on Defendants' Facebook group posts. *See id.* (citing ECF No. [6-1]).

The Court finds that Plaintiffs have plausibly established that the alleged defamatory statements were published. Although Defendants contend that Florida law requires a plaintiff to identify specific persons to whom the statements were made in the complaint, the Eleventh Circuit has expressly rejected that this strict Florida common law pleading requirement may "override the more liberal pleading standards of Fed. R. Civ. P. 8(a)." *Petricca v. Saxony Condo. Ass'n, Inc.*, No. 23-CV-81581, 2024 WL 3345516, at *6 (S.D. Fla. Apr. 15, 2024) (citing *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986)), *report and recommendation adopted*, No. 23-81581-CIV, 2024 WL 3338808 (S.D. Fla. July 8, 2024); *see also Grlpwr, LLC v. Rodriguez*, No. 3:23CV16480-TKW-HTC, 2023 WL 5666203, at *6 (N.D. Fla. Aug. 25, 2023) ("[T]he Eleventh Circuit has recognized that a federal court need not adhere to a state's strict pleading requirements and has held that Fed. R. Civ. P. 8 does not require a plaintiff to identify the specific persons to whom the statement was published.") (cleaned up); *Selinger v. Kimera Labs, Inc.*, No. 20-cv-24267, 2022 WL 34444, at *10 (S.D. Fla. Jan. 3, 2022) ("So, when pleading a Florida defamation claim in federal court, the plaintiff 'must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred.' Beyond that, further factual pleading is not required by Rule 8, such as the identification of the person or category of persons who received the publication at issue.") (citing *Five for Entertainment, S.A. v.*

*Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012); *Nationwide Relocation Servs., Inc. v. Walker*, 2008 WL 11333712, at *6 (S.D. Fla. Feb. 29, 2008)). Therefore, it is of no consequence that Plaintiffs do not identify a specific individual to whom the statements were published in their Amended Complaint, as such allegations are not required in federal court.

Moreover, as Plaintiffs correctly point out, courts in the Eleventh Circuit have specifically found allegations that statements were posted on social media are sufficient to satisfy the publication requirement for a defamation claim. *See e.g.*, *One for Israel v. Reuven*, No. 21-61475-CIV, 2022 WL 4465389, at *4 (S.D. Fla. Sept. 26, 2022) (finding the fact that "[t]he video was published on YouTube, Facebook, a Website, . . . and other social media platforms" was sufficient to establish the publication element); *Signorello v. Murphy*, No. 24-CV-22206, 2025 WL 2732567, at *9 (S.D. Fla. Aug. 6, 2025) (finding that allegations that statements were posted on the internet sufficient to establish publication), *report and recommendation adopted as modified*, No. 1:24-CV-22206-KMM, 2025 WL 3297828 (S.D. Fla. Sept. 17, 2025). Accordingly, because Plaintiffs have alleged that Defendants published the defamatory statements on the internet and various social media platforms that were accessible and were, in fact, accessed, Plaintiffs have adequately alleged the publication element of their defamation claim. *See Frank v. Fine*, 2024 WL 473718 (finding there was "no question that the social media posts meet the publication requirement" where plaintiff merely alleged that the defamatory statement was posted on social media).

However, even if the allegations in the Amended Complaint were not sufficiently specific as to who they were published to, the exhibits attached to the Amended Complaint identify individuals who viewed and interacted with the defamatory content. *See e.g.*, ECF No. [6-1] at 22. Consequently, the Court is satisfied that Plaintiffs have adequately pled the publication element of their defamation claim.

## B. Completeness of the Statements

Defendants contend that Plaintiffs' defamation claim is deficient because Plaintiffs do not accurately state the entirety of the allegedly defamatory statements in the Amended Complaint. Defendants argue that to determine whether a defamatory statement is actionable, the plaintiff must provide the "statement in its totality in the context in which it was uttered or published." ECF No. [42] at 6-7 (quoting *Smith v. Taylor Cnty. Pub. Co.*, 443 So. 2d 1042, 1047 (Fla. 1st DCA 1983)). Although Defendants concede that a plaintiff need not set out an oral defamatory statement verbatim, they argue that the plaintiff must provide the substance of the statement "with 'sufficient particularity to enable the court to determine whether the publication was defamatory.'" *Id.* at 7 (quoting *Edward L. Nezelek, Inc. v. Sunbeam Television Corp.*, 413 So. 2d 51, 55 (Fla. 3d DCA 1982)). Defendants maintain that "key words are omitted from the allegedly defamatory statements" in the Amended Complaint. *Id.*

Defendants first point to Plaintiffs' allegation that Defendant Naiah Monello-Fuentes "said Miracle was engaged in human trafficking [ ], when Naiah Monello-Fuentes['] actual statement was 'a claim that *could be construed* as human trafficking." *Id.* (emphasis in the original) (citing ECF No. [6] at ¶ 24). Defendants argue that by omitting the phrase "could be construed," Plaintiffs have so "substantially altered the substance of the statement" that the Court is unable to determine whether the statement is, in fact, defamatory or rather a mere unactionable pure opinion. *Id.*

Defendants next turn to Plaintiffs' allegation that Aymeric Monello-Fuentes "said that Miracle was involved in 'child laundering.'" ECF No. [42] at 7. According to Defendants, Aymeric Monello-Fuentes' "actual post reads '*possible* child laundering *situations*.'" *Id.* (emphasis in the original). Similar to the argument regarding the omission in Naiah Monello-Fuentes' statement, Defendants contend that "Plaintiffs' omission of the words 'possible' and 'situation' significantly

9

alter the substance" of the statement, thereby preventing the Court from determining whether the statement is indeed defamatory. Defendants also maintain that the allegation that they called Plaintiffs' business a "scam" is likewise incomplete, but do not identify the omissions that would "complete" the statement.

The last purported instance of incompleteness Defendants identify involves Plaintiffs' allegation that Naiah Monello-Fuentes "insinuates that a former employee of Miracle Surrogacy of Mexico informed [Naiah Monello-Fuentes] that they had been asked to 'alter medical records and when they refused, they believe the records were still changed.'" *Id.* at 8. (alterations in the original) (quoting ECF No. [6] at ¶ 8). According to Defendants, that statement is missing critical additional context. For instance, Defendants assert that the statement in question was "directly preceded by [the statement] 'they claimed to have worked for a surrogacy agency in Mexico.'" *Id.* (internal citations omitted in the original). Defendants contend that this omitted "precautionary phrase" impacts the Court's understanding of the statement as it shows the "statement is not even related to the Plaintiffs," and is therefore not actionable. *Id.*

Plaintiffs respond that the "Amended Complaint and its attached exhibits include the substance, medium, and context of each defamatory statement with more than sufficient particularity to apprise Defendants of the conduct at issue." ECF No. [43] at 8. Furthermore, to the extent the Court needs the omitted language to properly determine the defamatory nature of the statements, Plaintiffs point out that they have "incorporated the videos, screenshots, and posts containing these statements as exhibits to the Amended Complaint." *Id.* at 9. Accordingly, given the accompanying exhibits and the fact that a plaintiff need not quote the defamatory statements verbatim in the complaint, Plaintiffs' allegations are sufficient to survive the Motion to Dismiss.

Plaintiffs' Amended Complaint contains enough of the substance of the alleged statements, and any potential irregularities or omissions do not warrant dismissal at this juncture. Despite Defendants' insistence that a complaint alleging defamation must include more than a description of the alleged statements, the Eleventh Circuit imposes no such requirement.[2]

So long as the "allegation gives the defendant 'fair notice of the plaintiff's claim and the ground which it rests,'" a plaintiff's defamation allegations are sufficient to survive a motion to dismiss. *Banco Surinvest, S.A. v. SunTrust Bank, Atlanta*, 78 F. Supp. 2d 1366, 1370 (N.D. Ga. 1999) (quoting *Gould*, 1998 WL 1017208, at *16); *see Malhotra v. Aggarwal*, No. 1:17-CV-24407, 2019 WL 3425161, at *2 (S.D. Fla. July 30, 2019) (noting that a "description of the statement" or the "substance of the spoken words" will be sufficient to plausibly allege a defamation claim) (internal citations and quotations omitted). Here, although Plaintiffs did not reproduce each defamatory statement verbatim, they alleged the substance of the statements with reasonable specificity. *See Gould*, 1998 WL 1017208, at * 16; *Ward v. Triple Canopy, Inc.*, No. 8:17-CV-802-T-24 MAP, 2017 WL 3149431, at *3 (M.D. Fla. July 25, 2017). The absence of words and phrases such as "could be construed," "possible," and "situations" does not materially alter the substance of the statements, let alone render the statements so incomplete as to deprive Defendants of fair notice of Plaintiffs' claims.[3]

---

[2] "While Florida law determines the elements of a defamation claim, federal law [specifically, Rule 8(a)(2), Federal Rules of Civil Procedure] supplies the standard for pleading that claim." *Gould v. Sacred Heart Hosp. of Pensacola*, No. PCA 86-4392-RV, 1988 WL 1017208, at *16 (N.D. Fla. June 29, 1988) (citing *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir.1986); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1204 (1969)).

[3] Even accepting Defendants' contention that one of the purported defamatory statements is materially incomplete, as it fails to clarify that it concerns a different Mexican surrogacy company, any deficiency as to that particular statement does not render the entire defamation claim defective because the remaining statements provide sufficient information to establish the defamation claim.

Moreover, to the extent that the Court needs full, complete statements or additional context to properly evaluate the defamatory statements in question, Plaintiffs have provided the Court with exhibits that not only provide the full statements, but also the necessary context surrounding the statements. *See Utterback v. Morris*, No. 24-12947, 2025 WL 1455900, at *5 (11th Cir. May 21, 2025) (noting that at the motion to dismiss stage, the court may consider the pleadings and the exhibits attached thereto); *SZS Sols., Inc. v. Brother Int'l Corp.*, No. 0:17-CV-61942, 2018 WL 3126220, at *2 (S.D. Fla. June 26, 2018) (agreeing that attaching the defamatory material may facilitate the court's assessment of the plausibility of a complaint).  Accordingly, there is no basis for dismissal based upon the lack of completeness.

### C.  Falsity of the Statements

Defendants next argue that Plaintiffs have failed to allege sufficient facts to demonstrate that the alleged defamatory statements are false. ECF No. [42] at 9. Instead, Plaintiffs merely assert in a conclusory fashion that they do "not engage in 'practices based on misrepresentation' [ ] or 'human trafficking, gross negligence, medical malpractice, [or] assisting in the creation of incorrect genetics . . .."' *Id.* (quoting ECF No. [6] at ¶ 18, 27). Moreover, even if the allegations are deemed sufficient, Defendants maintain that statements are "substantially true" and there are no facts that "prove" that the allegedly defamatory statements are false.

Defendants first argue that Plaintiffs' allegation "that the baby provided by Miracle was not biologically related to either of [the Defendants] is not a defamatory statement because Plaintiffs acknowledge the truth of that statement in their Amended Complaint. Defendants further argue that the allegation that Miracle "'is responsible for the creation of hundreds of babies without verifying they are biologically related to the intended parents who hire them' [ ] is substantially true, as Miracle did not offer Noninvasive Prenatal DNA Test (NIP Test)" before or at the time of

Defendants' surrogacy process with Miracle. *Id.* at 11. Because they did not offer such testing, Defendants conclude without evidence that Miracle simply did not verify genetic connections. *Id.*[4]

Plaintiffs disagree that any of the statements at issue are substantially true and argue that, in any event, the Court "must accept the well-pleaded allegations of the Amended Complaint as true and draw all reasonable inferences in favor of the Plaintiffs." ECF No. [43] at 10. Furthermore, Plaintiffs contend that whether a statement is substantially true or false is a question of fact that cannot be resolved at the pleadings stage. *Id.*[5]

Plaintiffs have adequately alleged the falsity element of their defamation claim. *See Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019) ("[A] false statement about another is a required element of defamation."). While Defendants argue that allegations of falsity must be supported by detailed factual details that specifically refute the truthfulness of the defamatory statements, the Federal Rules of Civil Procedure, and the Eleventh Circuit do not impose such an onerous requirement. *See Moore v. Cecil*, 109 F.4th 1352 (11th Cir. 2024) ("[B]ecause we are at the motion to dismiss stage, for purposes of this opinion, we accept as true Moore's allegations in the complaint that the alleged statements were false."); *Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1274 (11th Cir. 2024) (noting that pleadings sufficient to survive a Rule 12(b)(6) motion need not be detailed); *cf. Greene v. Times Pub. Co.*, 130 So. 3d 724, 730 (Fla. 3d DCA 2014) (finding falsity adequately alleged where plaintiff stated the claims were false). Plaintiffs allege that the statements are false because: (1) "Miracle Surrogacy and

---

[4] Defendants do not address the truthfulness of any other statements at issue.

[5] Plaintiffs also dispute that they "have 'admitted' the truth of the challenged statements.'" ECF No. [43] at 11. According to Plaintiffs, nothing in the Complaint concedes or confirms the "defamatory insinuations" that "Plaintiffs engaged in unethical or criminal practices, that they built a surrogacy process on deception, that they misled clients, including Defendants, or that they engaged in human trafficking and child laundering." *Id.*

Miracle Surrogacy Mexico are not engaged in practices based on misrepresentation," and (2) "Miracle Surrogacy, Miracle Surrogacy of Mexico, and Yaden do not engage in human trafficking, gross negligence, medical malpractice, and assisting in the creation of incorrect genetics, nor does it act in any manner that would justify such statements." ECF No. [6] at ¶¶ 18, 27. These allegations, while not exceptionally detailed, are sufficient at the motion to dismiss stage, given that Defendants are on notice as to why Plaintiffs contend the defamatory statements in question are false. *Cf. Fla. Med. Ctr., Inc. v. New York Post Co.*, 568 So. 2d 454, 458 (Fla. 4th DCA 1990) (concluding that, on a motion to dismiss, because the "appellant alleged that the factual statements contained in the article were false, . . . we must proceed on the premise that any statements which we find have factual connotations are false.").

"Moreover, the actual truth or falsity of a statement seems to be quintessentially a question of fact that ought not to be determined on a motion to dismiss absent some extraordinary factor not present in this case." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016); *see also Utterback v. Morris*, No. 24-12947, 2025 WL 1455900, at *6 (11th Cir. May 21, 2025) ("Generally, truth is asserted as an affirmative defense, and thus is not considered at the motion-to-dismiss stage.").[6] Accordingly, the adequacy of Plaintiffs' falsity allegations is not a basis to dismiss the Amended Complaint.

---

[6] While Defendants are correct that a court may consider falsity at the motion to dismiss stage where the complaint and attached exhibits demonstrate on their face that the purported defamatory statements are substantially true, the Court need not go down that road here. *See Utterback*, 2025 WL 1455900, at *6. Even accepting their argument that the Complaint confirms the truth of certain defamatory statements, Defendants concede that the Complaint only confirms the truth of *some* of the statements. Therefore, because at least some of the defamatory statements are plausibly false, the substantial truth doctrine is not a basis for a dismissal of Plaintiffs' claim.

### D.  Whether the Statements are Pure Opinion

According to Defendants, the defamation claim should also be dismissed because the alleged defamatory statements are unactionable pure opinions. ECF No. [42] at 12. Defendants maintain that their statements were the result of their "own [subjective] experience and involvement in the surrogacy journey with [Plaintiffs]" and not assertions of fact. *Id.* Defendants argue that the use of the "words 'possible,' 'situations,' 'pressured,' 'aware,' and 'misled'" reflects the subjective nature of the claims and demonstrates that Defendants' statements were not intended to be taken as fact. *Id.* at 13.

Plaintiffs respond that, contrary to Defendants' contention that the alleged defamatory statements are nothing more than unactionable subjective opinions, the statements "go well beyond subjective impressions or rhetorical hyperbole" and "accuse Plaintiffs of serious misconduct, unethical behavior, and potentially criminal acts[.]" ECF No. [43] at 12. According to Plaintiffs, simply because a factual statement is couched as an opinion does not "transform an otherwise factual statement into an opinion statement." *Id.* at 13. Plaintiffs maintain that the alleged statements "are actionable as false statements of fact, or at the very least, as opinions implying the existence of undisclosed, defamatory facts." *Id.* A

"True statements, i.e., statements that are not capable of being proved false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016) (citing *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 717 (11th Cir. 1985)). "Whether a challenged statement is one of fact or opinion is a question of law to be decided by the court." *Dershowitz v. Cable News Network, Inc.*, 668 F. Supp. 3d 1278, 1281 (S.D. Fla. 2023), *aff'd*, 153 F.4th 1189 (11th Cir. 2025) (quoting *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018)). "In assessing whether an allegedly libelous statement is opinion, the

15

court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication." *Rasmussen v. Collier County Pub. Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006) (citing *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984)).

Following review of the alleged defamatory statements within their context, the Court finds Defendants' pure opinion argument without merit. As Plaintiffs correctly point out, simply because a person relies on their subjective experience when they make a factual assertion does not necessarily render that statement an opinion. The test for whether a statement is an assertion of fact or merely one's opinion is whether the statement is capable of being proven true or false. *See Block v. Matesic*, 789 F. Supp. 3d 1131, 1159 (S.D. Fla. 2025) ("The key 'difference between statements of opinion and statements of fact' is that 'statements of fact are readily capable of being proven true or false.'") (quoting *Turner v. Wells*, 879 F.3d 1254, 1264 (S.D. Fla. 2018)). Here, the parties are able to prove or disprove that: (1) the baby conceived was in no way biologically related to Fuentes nor Monello; (2) that Defendants were "denied access to basic medical records" and were "handed a child who is not biologically [theirs];" (3) that the Plaintiffs engaged in "gross negligence," "human trafficking," and "medical malpractice;" and (4) that Plaintiffs were engaged in "child laundering." *See* ECF [6-1] at 2.

The parentage of the baby is a verifiable fact that can be proven by scientific evidence. The possibility that Defendants may have reached that conclusion based on their own subjective experience does not transform the statement into an opinion. Furthermore, gross negligence and medical malpractice are recognized legal causes of action, and human trafficking is a criminal offense.[7] Because there is nothing in the record to suggest those statements were not accusations,

---

[7] Although child laundering is not an enumerated crime or civil cause of action, it is a defined term which the parties may prove Plaintiffs had or had not engaged in. *See* David M. Smolin, *Child Laundering As*

the allegations are necessarily assertions of fact that can be proven with evidence.[8] Being denied access to records is similarly not an opinion. Whether Defendants requested and were denied certain medical records can be disproved by Plaintiffs providing documentary evidence or testimony indicating what records Plaintiffs have provided to Defendants. *See Fla. Med. Ctr., Inc.*, 568 So. 2d 454, 459 (finding "specific factual observations about the hospital's services" were "provable as being true or untrue"). Accordingly, because those statements reasonably convey assertions of facts, Defendants' Motion to Dismiss fails on this ground.

### E.  Availability of Attorney's Fees

Defendants argue that under Florida law, a party is only entitled to attorney's fees if they are provided by statute or contract. Because there is no contract at issue in this case and Plaintiffs have failed to identify a statute entitling them to attorney's fees in a defamation action, Defendants maintain that dismissal of the request for attorney's fees is warranted.

Plaintiffs respond that they are not seeking attorney's fees in this case and, as such, the argument is moot. The Court agrees. There is no request for attorney's fees in Plaintiff's Amended Complaint, and the Court need not consider the matter further.

### F.  Availability of Injunctive Relief

Defendants contend that Plaintiffs' request for injunctive relief should be dismissed because the injunction Plaintiffs seek is unavailable under Florida law and the Court has already found such a request improper earlier in these proceedings.

---

*Exploitation: Applying Anti-Trafficking Norms to Intercountry Adoption Under the Coming Hauge Regime*, 32 Vt. L. Rev. 1 (2007).

[8] *Cf. Fla. Med. Ctr., Inc.*, 568 So. 2d at 459 (finding that the context of the article demonstrated that the statement that the plaintiff's system was designed to "rob the insurance company was not tantamount to an accusation that the hospital ha[d] committed the crime of robbery).

Plaintiffs maintain that Defendants mischaracterize the nature and scope of the injunctive relief sought, and they are entitled to seek the relief requested. ECF No. [43] at 16. Plaintiffs argue that, in denying their request for a temporary restraining order, the Court did not make a final adjudication on the merits of their entitlement to injunctive relief. The Court merely found that Plaintiffs were not entitled to the "extraordinary, emergency remedy" of a TRO. *Id.* Plaintiffs point out that Defendants offered no case law to support their proposition and contend the reason for the dearth of case law in the Motion is because there is "no caselaw establishing that the denial of a temporary restraining order precludes a party from seeking injunctive relief after [an] adjudication on the merits." *Id.* Given that the Court's prior order did not foreclose a future injunction, Plaintiffs argue they may still seek such relief at this juncture. Furthermore, Plaintiffs point out that, unlike their TRO motion, which sought to restrain Defendants from making future statements, the Amended Complaint only seeks to require "Defendants' to remove and retract the defamatory statements" Defendants have already made. *Id.* at 16. Therefore, Plaintiffs suggest the injunctive relief sought here does not implicate the same constitutional concerns present in their TRO motion and, as such, the request for injunctive relief is permissible.

While the Court's denial of Plaintiffs' motion for a temporary restraining order does not foreclose Plaintiffs from seeking permanent injunctive relief, that does not mean injunctive relief is available in a defamation action under Florida law. Indeed, "it is well-settled under Florida law that equitable, injunctive relief is ordinarily not available for claims of defamation." *Grayson v. No Labels, Inc.*, No. 6:20-CV-1824-PGB-LHP, 2023 WL 2919911, at *5 (M.D. Fla. Jan. 17, 2023); *Belmondo v. Amisial*, 337 So. 3d 856, 857 (Fla. 3d DCA 2022) ("The remedy for defamatory statements lies in an action at law for damages."); *see also Baker v. Joseph*, 938 F. Supp. 2d 1265, 1270 (S.D. Fla. 2013) (noting the "well-settled rule prohibiting injunctive relief in defamation

cases"); *Basulto v. Netflix, Inc.*, No. 1:22-CV-21796, 2023 WL 7129970, at *52 (S.D. Fla. Sept. 20, 2023) ("Courts typically refuse to grant permanent injunctions regarding speech in any circumstance, even where liability for defamation has been found.").

In Florida, the prohibition against injunctive relief in defamation cases is nearly all-encompassing and does not necessarily turn on whether the Plaintiff is seeking a prospective or retroactive relief. *see Weiss v. Weiss*, 5 So. 3d 758, 759 (5th DCA 2009) ("Because injunctive relief is generally unavailable [in a defamation case], a complainant is typically left to his or her remedy at law."); *Krapacs v. Bacchus*, 301 So. 3d 976, (Fla. 4th DCA 2020) (finding that no injunction relief was available because adequate remedy at law exists—money damages). There are two only readily recognized exceptions to the prohibition against injunctions involving defamation claims under Florida law. The first is where "the defamatory statements are made in the furtherance of the commission of another intentional tort." *Curvey v. Avante Grp.*, 327 So. 3d 401, 403 (Fla. 5th DCA 2021); *see Concerned Citizens for Jud. Fairness, Inc. v. Yacucci*, 162 So. 3d 68, 73 (Fla. 4th DCA 2014).[9] Here, Plaintiffs do not assert a claim for tortious interference with an advantageous business relationship. As such, the limited exception does not apply.

Some courts in this district have also found that a narrowly tailored permanent injunction may be available under Florida law for speech already found to be defamatory where the plaintiff is able to show that money damages alone would not provide complete relief. *See e.g.*, *Ward v. Triple Canopy, Inc.*, No. 8:17-CV-802-T-24 MAP, 2017 WL 3149431, at *5 (M.D. Fla. July 25, 2017) (citing *Saadi v. Maroun*, No. 8:07CV01976T24MAP, 2009 WL 3617788, at *2 (M.D. Fla.

---

[9] Some courts have also found that a permanent injunction may be available in a defamation action where the plaintiff contends that the remedy at law would be inadequate, *see Saadi v. Maroun*, No. 8:07CV01976T24MAP, 2009 WL 3617788, at *1 (M.D. Fla. Nov. 2, 2009) (citing *Wynn Oil Co. v. Purolator Chemical Corp.*, 536 F.2d 84, 86 (5th Cir. 1976)), however, because

Nov. 2, 2009); *Wentz v. Project Veritas*, No. 617CV1164ORL18GJK, 2018 WL 11252110, at \*4-5 (M.D. Fla. Jan. 31, 2018).

The injunctive relief sought here only seeks to have Defendants "remove or retrack the defamatory statements." ECF No. [6] at 8. Accordingly, because Plaintiffs do not seek a prior restraint on Defendants' future statements, Plaintiffs' requested injunction arguably falls within this narrow exception. However, to seek such injunctive relief, a plaintiff must also allege that it lacks an adequate remedy at law and that it will suffer irreparable harm by not having a permanent injunction. *See Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, No. 09-10004, 2009 WL 4890664, at \*6 (S.D. Fla. Dec. 17, 2009); *Saeme v. Levine*, No. 11-21913-CIV, 2011 WL 13323214, at \*3 (S.D. Fla. July 21, 2011) (noting that the complaint needed to demonstrate "a risk of irreparable injury and that [plaintiff] has no adequate remedy at law"); *Fisher v. Fla.*, No. 3:15-CV-1356-J-34MCR, 2016 WL 536847, at \*3 (M.D. Fla. Jan. 21, 2016), *report and recommendation adopted sub nom. Fisher v. State of Fla.*, No. 3:15-CV-1356-J-34MCR, 2016 WL 525178 (M.D. Fla. Feb. 10, 2016). Plaintiffs do not contend that damages sought in this case would be inadequate to provide them with complete relief were they to prevail on their defamation claim. *See generally* ECF No. [6]. Accordingly, Defendant's Motion is granted as to Plaintiffs' request for injunctive relief.

### G. Availability of Punitive Damages

Defendants further seek to dismiss the request for punitive damages because the Amended Complaint is devoid of allegations that would entitle Plaintiffs to such relief. According to Defendants, a plaintiff is only entitled to punitive damages in a defamation action if the defendant made the statement with actual malice. ECF No. [42] at 15. Defendants maintain there are no factual allegations that would suggest Defendants knew the statements they made were false or

that they subjectively entertained serious doubt as to the truthfulness of their statements. While Defendants may not have investigated the matter as diligently as a reasonable person would have liked before making the allegedly defamatory statements, Defendants argue that a failure to investigate alone is insufficient to establish actual malice.

Plaintiffs respond that "Defendants misstate both the pleading standard applicable to punitive damages and the factual allegations contained in Plaintiffs' Amended Complaint." ECF No. [43] at 17. Plaintiffs contend that Defendants are attempting to require them to prove rather than plead their entitlement to punitive damages, notwithstanding the fact that the case is still only in the pleadings stage. Given that Plaintiffs need not prove actual malice by clear and convincing evidence but rather must only "allege facts that, taken as true, support a plausible inference that the defendant acted with the requisite statement of mind," Plaintiffs insist they may pursue punitive damages based on the facts alleged. Plaintiffs point out that the Amended Complaint "alleges that Defendants made repeated public statements falsely accusing Plaintiffs of serious professional and ethical misconduct . . . [and] that Defendants knew such statements to be false or made them with reckless disregard for the truth." *Id.* Plaintiffs note that the Amended Complaint further alleges that "Defendants continued to publish these defamatory remarks with knowledge of their falsity, and with the intent to damage Plaintiffs' business reputation and relationships." *Id.* According to Plaintiffs, those allegations are more than enough to survive the pleadings stage.

"Under Florida common law, to recover punitive damages a defamation plaintiff must prove 'express malice' or 'common law malice'—that the defendant acted with a primary motive to injure the plaintiff personally." *Cable News Network, Inc. v. Black*, 374 So. 3d 811, 816 (Fla. 4th DCA 2023) (citing *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 727 (Fla. 4th DCA 2010)). Additionally, "the defamation plaintiff must also show actual malice"—i.e., that the

defendant knowledge of the statement's falsity or acted with reckless disregard for the truth. *Id.* (citing *Rabren v. Straigis*, 498 So. 2d 1362, 1363 (Fla. 2d DCA 1986)). Here, while Plaintiffs indeed allege that Defendants acted with actual malice by making defamatory statements with knowledge of their falsity, Plaintiffs offer no facts to support this conclusory allegation. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.") (quoting *Twombly*, 550 U.S. at 555). Plaintiffs do not allege any facts that explain how Defendants would have been aware that their statements were false, nor do Plaintiffs point to any information readily available to Defendants that would have refuted their allegations.[10] Plaintiffs cannot rely on barebones recitals of the elements of punitive damage to obtain such relief. Plaintiffs must allege reasonably specific facts that support Plaintiffs' entitlement to the requested relief and merely alleging that Defendants acted knowingly or with actual malice is not enough. *See King v. S. Poverty L. Ctr., Inc.*, 594 F. Supp. 3d 1272, 1278 (M.D. Ala. 2022). Accordingly, Defendants' Motion is granted as to Plaintiffs' request for punitive damages.

### H.  Shotgun Pleading

Finally, Defendants argue that the Amended Complaint constitutes a shotgun pleading because each allegedly defamatory statement made by both Defendants has been combined into a single count of defamation. ECF No. [42] at 17. Plaintiffs respond that the Amended Complaint is not a shotgun pleading as it satisfies both Rule 8(a) and 10(b). According to Plaintiffs, although their defamation claim involves multiple defamatory statements and multiple defendants, they insist the commingling of statements and defendants is permissible because their injuries "arise

---

[10] Moreover, Plaintiffs cannot rely on any abstract failure by Defendants to investigate claims because "a failure to investigate, standing on its own, does not indicate the presence of actual malice."  Michel v. NYP Holdings, Inc., 816 F.3d 686, 703 (11th Cir. 2016).

from the same course of conduct" and "same nucleus of operative facts." *Id.* at 18.  Plaintiffs argue the reason for the prohibition against shotgun pleadings is to ensure defendants are provided "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)). Therefore, because Plaintiffs do not obscure which allegations pertain to which Defendants and do not assert multiple claims, Plaintiffs maintain the Amended Complaint does not violate any of the four sins the Eleventh Circuit has found amount to a shotgun pleading.

The Court finds that the Amended Complaint does not constitute a shotgun pleading. The mere fact that Count I alleges wrongdoing by more than one Defendant does not mean that the Amended Complaint violates Rule 8. A claim may be brought against multiple defendants in a single count so long as the complaint specifies which defendant is responsible for each act or omission. *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (finding the complaint did not "fall into the fourth category [of shotgun pleadings] because even though several of the counts target[ed] multiple defendants, th[o]se counts "specif[ied] which of the defendants [we]re responsible for which acts or omissions.") (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)). Here, Plaintiffs specify in the Amended Complaint which Defendant made each of the purportedly defamatory statements. Accordingly, both Defendants are adequately apprised of which specific conduct they must defend against.

The Amended Complaint also does not amount to a shotgun pleading simply because each defamatory statement is not separated into individual counts. Although a count in a complaint will violate Fed. R. Civ. P. 10 where it incorporates multiple distinct causes of action into a single claim, each defamatory statement does not create a separate cause of action. *See Weiland*, 792 F.3d at 1320. Indeed, the defamatory statements at issue all concern the same series of events, a common

nucleus of facts, and involve the same Defendants. Moreover, Defendants cite no authority that supports the notion that each defamatory statement must be separately pled. Accordingly, Defendants' request to dismiss the Amended Complaint on shotgun pleading grounds is denied.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    Defendants' Motion to Dismiss, **ECF No. [42]**, is **GRANTED IN PART AND DENIED IN PART**.

2.    Defendants' Motion is **GRANTED** to the extent they seek to dismiss Plaintiffs' request for:

    a.   Attorney's Fees;

    b.   Injunctive Relief; and

    c.    Punitive Damages

3.    Defendants' Motion is **DENIED** to the extent Defendants seek to dismiss **Count I** of the Amended Complaint, ECF No. [6].

4.    Defendants shall file an Answer to the Amended Complaint **no later than February 13, 2026.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 30, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record